UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERT A. HORSE,<br><br>                    Plaintiff,<br><br>      vs.<br><br>WARDEN DARIN YOUNG, SOUTH DAKOTA STATE PENITENTIARY; AND CABINET SECRETARY DENNIS KAEMINGK, S.D. DEPARTMENT OF CORRECTIONS;<br><br>                    Defendants. | 4:14-CV-04137-LLP<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff, Robert A. Horse ("Horse"), is an inmate at the South Dakota State Penitentiary ("SDSP") in Sioux Falls, South Dakota.  He has filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging a violation of his civil rights. He has been granted *in forma pauperis* status and, as ordered, has timely paid the initial partial filing fee of  $24.80.

The Court has, as it must, "screened" this case pursuant to 28 U.S.C. § 1915, and has determined it must be dismissed  for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

## FACTUAL BACKGROUND

In his Complaint, Horse alleges the defendants have violated his rights under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.  He explains that on April 14, 2014, he was issued a

disciplinary report for "L-41 and L-45"[1] but claims the disciplinary report was
supported only by anonymous kites and confidential informants.  He further
explains "Special Security concluded their investigation claiming I was involved
in the assault that took place in the East Hall shower room by having RBH
gang member place a hit on the victim. . ."

Horse claims the prison officials should have administered a polygraph
test to prove his innocence.  He explains at the time of the disciplinary action
he was the president of the Native American Council of Tribes (NACT), whose
membership "has always been accusing each other of wrong doing and using
special security as a tool to retaliation for political purposes and political gain
within the organization."  Horse explains prison officials should have realized
he is a sacred pipe carrier and is not allowed by God to participate in violence
or negativity.   He further claims he has been "marked" by prison officials as a

---

[1] According to the disciplinary report which is attached to Horse's Complaint,
an L-41 infraction is for "conduct which disrupts or interferes with the security
or good order of the institution or interfering with a staff member in the
performance of his/her duties including circumventing or attempting to
circumvent any rule or regulation."  An L-45 infraction is for "engaging in gang
organization, recruitment, or blatant displays of gang activity or materials
related to Security Threat Groups."  The disciplinary report describes the
incident as follows:  "On or about the above date and time an inmate was
assaulted in the East Hall shower room.  The following day Special Security
was made aware of this incident.  During the investigation over the next several
days we conducted several interviews involving reliable CI's(sic) and received
numerous kites indicating the involvement of known RBH gang members and
inmate Horse.  During this process inmate Horse's name was mentioned in
most of the kites and by the CI's.  Special Security has concluded that inmate
Horse was involved in the assault by having the known RBH gang member
place a 'hit' on the victim.  Special Security also believes that this was a result
of the actions at the NACT meeting that took place earlier in the day.  Inmate
Horse is the president of this organization.  This concludes Special Security's
investigation."

gang member, and the disciplinary report will negatively affect his chances at being released on parole.

In the "Relief" section of the Complaint Horse asks the Court to expunge the disciplinary report.  He also requests compensation for court costs, filing fees and attorney's fees.

## JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's  Standing Order dated October 16, 2014.

## DISCUSSION

**A.      Screening Standards for Prisoner Complaints Pursuant to 28 U.S.C. §§ 1915, 1915A and FED. R. CIV. P. 12(b)(6)**

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii))  and 1915A(b)(1), a prisoner's complaint should be dismissed on screening if it "fails to state a claim upon which relief may be granted."  This standard is the same standard as is used to determine whether a complaint satisfies the standards of FED. R. CIV. P. 12(b)(6).  *Kane v. Lancaster County Dept. of* Corrections, 960 F.Supp. 219 (D. Neb. 1997).  A prisoner complaint is screened for dismissal under 28 U.S.C. § 1915  "accepting as true all of the factual allegations contained in the complaint and affording the plaintiff all reasonable inferences that can be drawn from those allegations." *Jackson v. Nixon*, 747 F.3d 537, 540-41 (8th Cir. 2014).  Further, "a *pro se* complaint, however inartfully pleaded, [is held] to less stringent standards than formal pleadings drafted by lawyers." *Jackson*, 747 F.3d at 541. (citation omitted).

3

The United States Supreme Court addressed the standard district courts are to apply to FED. R. CIV. P. 12(b)(6) motions in *Bell Atlantic Corp.* v. Twombly, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The law predating *Twombly* and *Iqbal* held that under FED R. CIV. P. 12(b)(6), the court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). However, *Conley's* "no set of facts" language was overruled in *Twombly. Twombly*, 550 U.S. at 563. Instead, the Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face." *Id.* at 570 (emphasis added).

The Court discussed the applicability of FED. R. CIV. P. 8(a)(2). *Id.* at 554-55. According to Rule 8, a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Court acknowledged that a complaint does not need "detailed factual allegations" to survive a motion to dismiss, but emphasized a plaintiff's obligation to provide the grounds for his entitlement to relief as requiring more than a mere recital of the elements of his cause of action. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court imposed a "plausibility standard" and held that a claim "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim. *Id.* at 556.

4

The Court rejected the notion that conclusory allegations were enough to survive a 12(b)(6) motion to dismiss a claim.  *Id.* at 556-57.  The Court explained, "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [a valid claim] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " *Id.* at 557 (quoting FED. R. CIV. P. 8(a)(2)).  The Court said the plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  *Id.*

In 2009, the Supreme Court decided *Ashcroft v. Iqbal*, and affirmatively applied  the *Twombly* Rule 12(b)(6) standard to all civil actions.  *Iqbal*, 556 U.S. at 684.  Because *Twombly* interpreted and applied FED. R. CIV. P. 8,  and because the Federal Rules of Civil Procedure apply to all civil actions in federal court, the *Iqbal* Court said, *Twombly* was properly applied to all federal civil cases.  *Id.*(citing FED. R. CIV. P. 1).

The *Iqbal* Court expressly adopted *Twombly*'s announcement that Rule 8 does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The Court reaffirmed *Twombly*'s holding that a complaint containing mere "labels and conclusions" or a "formulaic recitation of a cause of action" is insufficient to survive a motion to dismiss under Rule 12(b)(6).  *Id.*

5

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). The plausibility standard requires that the plaintiff allege more than a "sheer possibility" that the defendant committed the alleged unlawful conduct, but does not impose a "probability requirement" at the pleading stage. *Id. (*quoting *Twombly*, 550 U.S. at 556). The plaintiff must, however, allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of [the conduct complained of*]." Twombly, 550* U.S. at 556. Where a plaintiff pleads facts that are merely consistent with a defendant's liability, he has not "nudged [his] claim across the line from conceivable to plausible," and the complaint must be dismissed. *Iqbal*, 556 U.S. at 680 (*citi*ng *Twombly,* 550 U.S. at 570). There is no heightened requirement of fact pleading of specifics--only a requirement that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Court identified two "working principles" from *Twombly*. *Iqbal*, 556 U.S. at 678. First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. *Id.* (citing *Papasan,* 478 U.S. at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. (*quoting *Twombly,* 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

6

Second, in applying the plausibility standard, the Court stated that it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (quoting decision below *Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2).  *Iqbal,* 556 U.S. at 679.

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  *Id.* at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  *Id.* at 679; *Twombly,* 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  *Iqbal,* 556 U.S. at 679.  It is with these standards in mind that Horse's Complaint is carefully considered.

## B.     Due Process and Prison Disciplinary Hearings

Horse's claims regarding his placement in disciplinary segregation and loss of privileges fails.  A prison inmate's right to due process  regarding his classification (and accompanying privileges or lack thereof) within prison walls was clarified and greatly circumscribed by the United States Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995).  In that case, the Court stated:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* 515 U.S. at 483-84 (citations omitted). The Court held the prisoner's discipline in segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486.

In *Freitas v. Ault*, 109 F.3d 1335 (8th Cir. 1997), the prisoner plaintiff complained his due process rights were violated when he was disciplined and transferred to a different facility and placed in "on- call" status. These disciplinary measures meant the prisoner was: placed in "lock-up" (i.e. was allowed out of his cell for only one or two hours per day), allowed fewer visitors and no phone calls, not allowed to work at a prison job, restricted in his ability to keep personal items in his cell, and restricted in his ability to earn good time credits. *Frietas,* 109 F.3d at 1337. The Eighth Circuit held as a matter of law that "these conditions do not constitute any atypical and significant hardship when compared to the burdens of ordinary prison life." *Id.* In light of *Sandin* and *Freitas*, Horse's claims regarding his placement in disciplinary segregation and loss of privileges should be dismissed.

**C.    The Link Between Horse's Disciplinary Report and His Parole Proceedings is Too Attenuated to Constitute a Protected Liberty Interest**

Horse also asserts the disciplinary write up violated his due process rights because he believes he has now been "marked" as a gang member and the disciplinary report will negatively affect his chances at receiving parole. *Sandin* rejected this premise as well.  *Sandin*, 515 U.S. at 487.  The Court noted:

> [n]othing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, even though misconduct is by regulation a relevant consideration. The decision to release a prisoner rests on a myriad of considerations.  And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record.  The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural requirements of the Due Process Clause.

*Id.*  South Dakota inmates are likewise afforded a hearing if they disagree with the warden's determination they have not met the requirements for automatic release on their initial parole date.  *See* SDCL 24-15A-39.  Similarly, nothing in South Dakota's code requires the South Dakota Board of Pardons and Paroles to deny parole in the face of a misconduct record or grant parole in its absence. *See* SDCL 24-15A-42.  That statute states:

> **24-15A-42.  Procedural Rules-Parole release standards**
> Pursuant to chapter 1-26, the board may promulgate procedural rules for the effective enforcement of this chapter and for the exercise of powers and duties conferred upon it.  Additionally, the board shall utilize the following standards in determining if the inmate has substantively met the requirements for parole release at the initial parole date:
> (1) The inmate's compliance with work, school, and program directives;

(2) The inmate's compliance with the rules and policies of the department;
(3) Conduct by the inmate evincing an intent to reoffend; and
(4)  Mitigating factors impacting the warden's determination of substantive noncompliance.
The Board may also use standards in subdivisions (1) to (3), inclusive, of this section in discretionary parole decisions.  In addition to considering a discretionary parole for an inmate who previously violated parole, the board may consider the nature and seriousness of the conduct leading to the parole revocation.

In this case, therefore, as in *Sandin*, the decision to release Horse on parole rests on a "myriad of considerations." *Sandin*, 515 U.S. at 487.  "The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the requirements of the Due Process Clause." *Id.*  For this reason as well, Horse's Complaint fails to state a cause of action upon which relief may be granted and should be dismissed.

**D.     Horse's Filing Fees.**

If Horse's suit had been allowed to proceed and he prevailed on the merits, he would have recovered the filing fee.  Both the legislative history and the case law interpreting the Prison Litigation Reform Act, however, instruct that unsuccessful prison litigants, like any other litigants, do not get their filing fees back if their cases are dismissed.  That Horse's case is dismissed pursuant to the screening procedures of § 1915 does not negate his obligation to pay the fee. *In Re: Prison Litigation Reform Act,* 105 F.3d 1131, 1134 (6th Cir. 1997). The obligation to pay a filing fee accrues the moment a plaintiff files his complaint with the court, and it cannot be avoided merely because the case is eventually dismissed as frivolous*. Anderson v. Sundquist,* 1 F.Supp.2d 828,

10

830 n. 5 (W.D. Tenn. 1998). One of the purposes of the Prison Litigation

Reform Act is to

> require the prisoners to pay a very small share of the large burden
> they place on the Federal judicial system by paying a small filing fee
> upon commencement of lawsuits.  In doing so, the provision will deter
> frivolous inmate lawsuits.  The modest monetary outlay will force
> prisoners to think twice about the case and not just file reflexively.
> Prisoners will have to make the same decision that law abiding
> Americans must make:  Is the lawsuit worth the price?

*Roller v. Gunn*, 107 F.3d 227, 231 (4th Cir. 1997) (quoting 141 Cong. Rec. at

S7526 (May 25, 1995)  *See also In Re: Tyler*, 110 F.3d 528, 529-30 (8th Cir.

1997) (prisoner will be assessed full filing fee even if his case is dismissed

because "the PRLA makes prisoners responsible for their filing fees the moment

the prisoner brings a civil action or files an appeal.").  Horse remains

responsible for the balance of the $350.00 filing fee.

Horse is advised that the dismissal of this lawsuit will be considered his first

"strike" for purposes of the Prison Litigation Reform Act.  28 U.S.C. § 1915(g)

provides:

> In no event shall a prisoner bring a civil action or appeal a judgment
> in a civil action or proceeding under this section if the prisoner has,
> on 3 or more prior occasions, while incarcerated or detained in any
> facility, brought an action or appeal in a court of the United States
> that was dismissed on the grounds that it is frivolous, malicious, or
> fails to state a claim upon which relief may be granted, unless the
> prisoner is under imminent danger of serious physical injury.

## CONCLUSION and RECOMMENDATION

Liberally construed, Horse attempts to allege a violation of the Due

Process Clause of the United States Constitution by a faulty or incorrect prison

disciplinary proceeding.  Horse's Complaint does not assert facts to sustain

this theory of liability against any of the defendants.  Horse has failed, therefore, to sufficiently allege he has been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States.

It is therefore  RECOMMENDED to the District Court that Horse's Complaint (Doc. 1) be DISMISSED without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and that he remain responsible for the balance of the  $350.00 filing fee.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

DATED October 22, 2014.

THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge

12